IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHAPMAN-MARTIN EXCAVATING &
GRADING, INC.,

                        Plaintiff,

v.                                               CIVIL ACTION NO. 2:11-cv-00563

HINKLE CONTRACTING COMPANY, LLC., et al.,

                        Defendants.

**MEMORANDUM OPINION & ORDER**

Pending before the court is the plaintiff Chapman-Martin Excavation and Grading, Inc.'s ("CME") Motion to Remand [Docket 5], the defendants Hinkle Contracting Company, LLC ("Hinkle") and Hartford Fire Insurance Company's ("Hartford") Motion to Dismiss or Stay Proceedings Pending Arbitration [Docket 16], and the defendant Hartford Fire Insurance Company's Motion to Dismiss Counts VI and VII of the Complaint [Docket 19]. For reasons discussed below, the court **DENIES** the Motion to Remand [Docket 5], the court **GRANTS** the defendants' Motion to Stay Proceedings Pending Arbitration [Docket 16] and **DENIES** the defendants' Motion to Dismiss [Docket 16], and the court **GRANTS** the defendant Hartford's Motion to Dismiss Counts VI and VII of the Complaint [Docket 19].

**I.    Background**

    A.    *Facts*

This case arises out of a contract dispute between Hinkle and CME. Hinkle had entered into a contract with the West Virginia Department of Transportation ("WVDOT") to pave parts of the King Coal Highway in Mingo County, West Virginia. (Pl.'s Mem. Supp. Mot. Remand [Docket 6], at 1.) Hinkle also purchased a contract bond from Hartford Fire Insurance Company indemnifying Hinkle from claims arising from the WVDOT project. (*Id.*)

On December 22, 2009, Hinkle entered into a subcontract with CME in which CME agreed to perform grading work and install drainage systems on parts of the King Coal Highway. (*Id.* at 1-2.) The subcontract contained provisions addressing how the parties would resolve disputes arising under the contract. (Notice of Removal [Docket 1-2], at Ex. A, § 16.) Under those provisions, the parties agreed that notification and mediation were condition precedents for litigation or arbitration. The agreement also states that "[i]f a disputed [c]laim remains unresolved after negotiation or mediation, [Hinkle] shall have the exclusive option either to have the dispute decided by a court or by arbitration . . . ." (*Id.* § 16.2(e).) Additionally, the subcontract contains a forum selection agreement. The forum selection agreement provides:

> 16.6 <u>LITIGATION VENUE AND WAIVER OF JURY TRIAL</u>. The exclusive jurisdiction and venue for litigation arising out of related to this Agreement, or breach thereof, shall be in the Circuit Court of Kanawha County, West Virginia. Trial shall be by the Court without a jury. THE PARTIES EXPRESSLY WAIVE THEIR CONSTITUTIONAL RIGHT TO JURY TRIAL AND ACKNOWLEDGE THAT THIS WAIVER IS GIVEN VOLUNTARILY AND FOLLOWING CONSULTATION WITH LEGAL COUNSEL OR SUFFICIENT OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL. Provided, however, that for projects outside the Commonwealth of Kentucky, HCC may seek enforcement of the arbitration provisions herein in any court of competent jurisdiction.

(*Id.* § 16.6.)

A dispute between the parties arose concerning CME's performance under the subcontract and Hinkle's payment of CME. (Pl.'s Mem. Supp. Mot. Remand [Docket 6], at 2.) CME asserts

- 2 -

that it performed the work required under the subcontract and that Hinkle has failed to pay CME for its performance under the subcontract. (*Id.*) In contrast, Hinkle claims that CME "failed to complete its work" required by the subcontract and failed to "pay amounts owed by CME to its subcontractors and suppliers." (Defs.' Resp. Opp'n Pl.'s Mot. Remand [Docket 15], at 4.) Additionally, Hinkle claims that CME's alleged failure to perform resulted in Hinkle incurring "costs in excess of $2,000,000." (*Id.*)

B. *Procedural History*

This case was originally filed in the Circuit Court of Kanawha County on July 20, 2011, and, on August 18, 2011, Hinkle and Hartford removed the case to this court. (Notice of Removal [Docket 1], at 1.) CME filed a Motion to Remand the Case to Circuit Court of Kanawha County on August 24, 2011 [Docket 5]. On October 12, 2011, Hartford and Hinkle filed a Motion to Dismiss or Stay Proceedings Pending Arbitration [Docket 16]. Additionally, Hartford has filed separately a Motion to Dismiss Counts VI and VII of the Complaint [Docket 19]. These motions are now ripe for review.

**II.     Motion to Remand**

A. *Standard of Review*

An action may be removed from state court to federal court if it is one over which the district court would have original jurisdiction. 28 U.S.C. § 1441(b). The burden of establishing federal jurisdiction is placed on the party seeking removal. *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction raises significant federalism concerns and therefore must be strictly construed. *Id.* If federal jurisdiction is doubtful, remand is necessary. *Id.* Removal in the instant case is premised on 28 U.S.C.

§ 1332(a), which states: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between [] [c]itizens of different States . . . ." 28 U.S.C. § 1332(a). The parties do not dispute that this case satisfies the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a). Specifically, the parties in this case are citizens of different states and the amount in controversy exceeds $75,000.

  B. *Motion to Remand Analysis*

CME asserts that the case should be remanded because the forum selection agreement in the subcontract is a contractual waiver of Hinkle's right to remove. (Pl.'s Mem. Supp. Mot. Remand [Docket 6], at 3-4.) CME claims that the defendants "agreed that the exclusive jurisdiction and venue for litigation . . . is the Circuit Court of Kanawha County" and that this constituted a waiver of the defendants' right to remove the case to federal court. (*Id*. at 4.) Additionally, CME argues that the defendants cannot "pars[e] the language of section 16.6" to distinguish between forums for litigation and for enforcing arbitration provisions. (*Id*. at 6-7.)

In contrast, the defendants assert that the forum selection clause contained in the subcontract does not waive their right to remove the case to this court. (Defs.' Resp. Opp'n Pl.'s Mot. Remand [Docket 15], at 6.) The defendants' argument relies on the last sentence of § 16.6, which states that "for projects outside the Commonwealth of Kentucky, [Hinkle] may seek enforcement of the arbitration provisions herein in any court of competent jurisdiction." (*Id*. at 6.) Hinkle and Hartford claim that Hinkle has exercised its right to resolve the dispute through arbitration, and the defendants are now seeking to enforce the arbitration provisions in this court. (*Id*.)

- 4 -

A fundamental rule of contract law is that a "court in deciding disputes about the meaning of a contract . . . will endeavor to carry into effect the intent of the parties to the agreement." *Bennett v. Dove*, 166 W. Va. 772, 774 (1981). Courts are not "to alter, pervert, or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract." *Id*. To respect the parties' intent, courts should give the words used in a contract their ordinary meaning. *Id*. An agreement expressing the parties' intentions in "plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." *Id*. (quoting *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484 (1962)). Courts must ascertain the parties' intentions by examining the language of the entire agreement. *See E. Gas & Fuel Assoc. v. Midwest-Raleigh, Inc.*, 374 F.2d 451, 454 (4th Cir. 1967). Specifically, a court must construe the agreement's language in the manner that is most consistent with the contract viewed in its entirety. *See S.J. Groves & Sons Co. v. W. Va. Turnpike Comm'n*, 164 F. Supp. 816, 822 (S.D. W. Va. 1958).

When § 16.6 is read in the context of the entire agreement between the parties, it is clear that the defendants did not waive their right to remove this case to this court. The agreement establishes two potential channels of dispute resolution that Hinkle can elect: arbitration and litigation. Similarly, § 16.6 establishes two separate forums for litigation and arbitration. Under the agreement, the "exclusive jurisdiction and venue for litigation" is the Circuit Court of Kanawha County. If Hinkle chose to litigate, then the Circuit Court of Kanawha County would be the proper forum. However, if Hinkle elects to pursue arbitration as its method for dispute resolution, then Hinkle can enforce the arbitration provisions "in any court of competent jurisdiction."

In this case, Hinkle has elected to resolve this dispute through arbitration, and this dispute arose from a contract that was to be performed in West Virginia. Furthermore, the defendants are attempting to enforce the arbitration provisions of the agreement in this court by moving this court to dismiss the claims or to stay the proceedings pending arbitration. According to § 16.6, Hinkle can enforce the arbitration provisions in any court of competent jurisdiction, and this court is a court of competent jurisdiction because the case satisfies the requirements for jurisdiction under 28 U.S.C. § 1332(a). Thus, the court **FINDS** that the defendants did not contractually waive their right to remove this case to federal court in § 16.6 of the agreement. Accordingly, the court **DENIES** the plaintiff's Motion to Remand [Docket 5].

### III. Motion to Dismiss or Stay Proceedings Pending Arbitration

The defendants have moved the court to dismiss or stay the proceedings in this court pending arbitration of the dispute in Lexington, Kentucky. Specifically, the defendants argue that the Federal Arbitration Act § 3 requires this court to stay the proceedings because the parties agreed to arbitrate their dispute. (Mem. Supp. Mot. Dismiss or Stay Proceedings Pending Arbitration [Docket 17], at 6.) The defendants claim that there is a valid agreement to arbitrate and that this dispute is arbitrable. (*Id.* at 6-8.)

In response, the plaintiff argues that the proceedings should not be stayed or dismissed because "the provision requiring arbitration is invalid and unenforceable." (Pl.'s Resp. Defs.' Mot. Dismiss or Stay Proceedings Pending Arbitration [Docket 24], at 4.) CME argues that there is no valid arbitration agreement because the arbitration clause in the contract provides that the parties would arbitrate or litigate their disputes at Hinkle's sole discretion. (*Id.* at 5-6.)

Additionally, CME argues that the arbitration clause is invalid because it violates West Virginia law because of the "inequitable nature" of the arbitration provision.  (*Id*. at 7-8.)

A court must stay litigation pending an arbitration proceeding in certain circumstances under the Federal Arbitration Act.  The Federal Arbitration Act requires that when an issue is "referable to arbitration under an agreement in writing," "the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action."  9 U.S.C. § 3.  For a court to stay proceedings pending arbitration, the arbitration agreement must be enforceable.  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011).  An arbitration agreement may be "declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Id*.  Specifically, an arbitration agreement may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability."  *Id.* (quoting *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  Additionally, district courts have the power to stay claims against a non-arbitrating party when a case involves both arbitrating and non-arbitrating parties.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 1, 21 n.23 (1983) ("That decision is one left to the district court . . . as a matter of its discretion to control its docket.").

The plaintiff claims that the arbitration provision is unenforceable because the arbitration agreement lacks "valid, mutual obligations to arbitrate disputes under the subcontract."  (Pl.'s Resp. Defs.' Mot. Dismiss or Stay Proceedings Pending Arbitration [Docket 24], at 5.)  In West Virginia, a valid contract requires mutuality of obligation.  *See Edward Petry & Co. v. Greater Huntington Radio Corp.*, 245 F. Supp. 963, 971 (S.D. W. Va. 1965).  However, a court must look to the entirety of a contract, not just examine individual terms, to determine if the mutuality of

obligation requirement is satisfied. *See W. Va. ex rel. Richmond Am. Homes of W. Va., Inc. v. Honorable David H. Sanders*, No. 11-0770, at *17 (W. Va. Nov. 21, 2011) ("If necessary, the trial court may consider the context of the arbitration clause within the four corners of the contract . . . ."); 4A MICHIE'S JURISPRUDENCE OF VIRGINIA AND WEST VIRGINIA, CONTRACTS § 28 (2007) ("Mutuality of contract . . . should properly be taken to be sufficiently complied with when there are promises on each side that something shall be done for the benefit of the other side, furnishing therefor considerations by each party, although they may relate to different terms of the contract . . . ."). In this case, the contract between the parties is bargained for and each party has provided consideration for the contract. Specifically, Hinkle agreed to pay CME for its work under the contract, and CME agreed to perform according to the agreement. Thus, the court **FINDS** that the contract between the parties satisfies West Virginia's mutuality of obligation requirement.

The plaintiff also argues that the "dispute resolution provisions in the contract are not valid under West Virginia law" because the arbitration provision is unconscionable. (Pl.'s Resp. Defs.' Mot. Dismiss or Stay Proceedings Pending Arbitration [Docket 24], at 7-8.) Under West Virginia law, the test for unconscionability is a two-part test, involving a determination of whether the contract is procedurally and substantively unconscionable. *Brown v. Genesis Healthcare Corp.*, --- S.E.2d ---, 2011 WL 2611327 (W. Va. 2011). Procedural unconscionability considers "inequities, improprieties, or unfairness in the bargaining process and the formation of the contract." *Id*. In contrast, substantive unconscionability concerns "unfairness in the contract itself—'overall imbalance, one-sidedness, *laesio enormis*, and the evil of the resulting contract'—and whether a contract term has 'overly harsh or one-sided results.'" *Id*. (quoting

*McGinnis v. Cayton*, 173 W. Va. 102, 114 (1984)). In this case, the parties to the contract were two sophisticated construction companies. Additionally, the contract was bargained for by both parties as evidenced by the handwritten edits on the agreement. Thus, the court **FINDS** that the arbitration term is not procedurally unconscionable. Furthermore, the contract is commercially reasonable and its terms do not unfairly affect one party. *See Brown*, --- S.E.2d ---, 2011 WL 2611327 (W. Va. 2011). Arbitration clauses that provide for arbitration at the unilateral election of one party are common in construction contracts and courts often enforce these provisions. *See Progressive Pipeline Mgmt., LLC v. N. Abbonizio Contractors, Inc.*, No. 10-4551, 2011 WL 1343031, at *7 (E.D. Pa. Apr. 7, 2011) (citing *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 416-17 (W.D. Pa. 2006); *U.S. ex rel. Mileston Tarant, LLC v. Fed. Ins. Co.*, 672 F. Supp. 2d 92, 95 (D.D.C. 2009); *Builders Grp. LLC v. Qwest Commc'ns Corp.*, No. 07-5464, 2009 WL 3170101, at *1, 5-6 (S.D.N.Y. Sept. 30, 2009)). Thus, the court **FINDS** that the arbitration term is not substantively unconscionable, and the arbitration clause is not unconscionable under West Virginia law.

The court also **FINDS** that the dispute between the parties is arbitrable. The agreement between Hinkle and CME states that "[a]ll claims, disputes, controversies and matters in question . . . arising out of, or relating to, this [a]greement or the breach thereof . . . shall be resolved by mediation followed by arbitration or litigation at [Hinkle's] sole option." (Notice of Removal [Docket 1-2], at Ex. A, § 16.) This dispute concerns the parties' performances under the subcontract agreement, and thus it arises out of the agreement and the dispute is arbitrable. Accordingly, the court **GRANTS** the defendants' Motion to Stay the Proceedings Pending Arbitration [Docket 16].

### IV.     Harford's Motion to Dismiss Courts VI and VII of the Plaintiff's Complaint

    A.     *Failure to State a Claim for Which Relief Can Be Granted*

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarranto v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. As the Supreme Court reiterated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 129 S. Ct. at 1949-50. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise a claim from merely possible to probable. *Id.*

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint must contain enough facts to "nudge[] [a] claim across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

B.  *Analysis*

The defendant Hartford moves the court to dismiss Count VI, the plaintiff's common law bad faith claim against Hartford, and Count VII, the plaintiff's unfair claims settlement practices claim under W. Va. Code § 33-11-1 *et seq.* Hartford argues that the plaintiff's claims for common law bad faith and unfair claims settlement practices are barred because Hartford claims that the plaintiff is a third party claimant. (Def.'s Mem. Supp. Mot. to Dismiss Counts VI & VII Pls.' Compl. [Docket 20], at 5-6.) Hartford asserts that West Virginia law bars third party claimants from bringing common law bad faith claims and unfair settlement practices claims. (*Id.* at 7-8.) In response, CME asserts that this court should certify the question of whether a party who brings a claim against a surety is a third party claimant to the West Virginia Supreme Court of Appeals. (Pl.'s Resp. Mot. to Dismiss Counts VI & VII Pl.'s Compl. [Docket 23], at 2-4.) CME claims that the issue meets the requirements of W. Va. Code § 51-1A-3 because it is outcome determinative and because CME claims that the West Virginia appellate courts have not addressed this issue. (*Id.* at 3-4.)

In *Southern West Virginia Paving, Inc. v. Elmo Greer & Sons, LLC*, this court addressed whether a subcontractor bringing claims for common law bad faith and unfair claims settlement

- 11 -

practices against a surety is a third party claimant.   691 F. Supp. 2d 677, 679 (S.D. W. Va. 2009). *Southern West Virginia Paving* involved a subcontractor in a construction project who brought claims for common law bad faith and unfair claims settlement practices against a surety who had signed a bond agreement with the contractor.  *Id*. at 678.  In that case, the court found that the subcontractor was "clearly a third-party claimant and barred from asserting claims for unfair settlement practices and bad faith."  *Id*. at 680.

Similarly, in this case, CME is a third party claimant.  CME is not a party to the bond agreement.   Additionally, CME has an adversarial relationship with Hartford, "not a contractual relationship from which a duty of good faith and fair dealing would arise." *See id*.  Thus, the court **FINDS** that CME is a third party claimant and that CME is barred from bringing its claims for common law bad faith claim and unfair settlement practices.  Accordingly, the court **GRANTS** the defendant Hartford's Motion to Dismiss Count VI and VII of the Plaintiff's Complaint [Docket 19].

In sum, the court **DENIES** the plaintiff's Motion to Remand [Docket 5], the court **GRANTS** the defendants' Motion to Stay Proceedings Pending Arbitration [Docket 16] and **DENIES** the defendants' Motion to Dismiss [Docket 16], and the court **GRANTS** the defendant Hartford's Motion to Dismiss Counts VI and VII of the Complaint [Docket 19].  This court has found the dispute between Hinkle and CME is arbitrable and that there was a valid agreement to arbitrate, and thus granted the defendants' Motion to Stay Proceedings Pending Arbitration. Additionally, the court is cognizant that Hinkle has filed a petition to compel arbitration in the United States District Court for the Eastern District of Kentucky.  The defendant Hinkle obviously subscribes to the majority view that the appropriate forum for its motion to compel

arbitration is the United States District Court for the Eastern District of Kentucky. *See Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997) ("We agree with the majority of courts that have recognized that, where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4."). Thus, this court having granted the defendants' Motion to Stay awaits the resolution of the case in Kentucky.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court also **DIRECTS** the clerk to place the case on the inactive docket. Additionally, the court **DIRECTS** that the court send Judge Coffman of the United States District Court for the Eastern District of Kentucky a copy of this Order.

    ENTER:    November 29, 2011

Joseph R. Goodwin, Chief Judge

- 13 -